The premises lie in Cherokee County and contain 140 acres. The lessor of the plaintiff claims title in the following manner: The General Assembly of 1848 passed a resolution, which was ratified on 26 January, 1849, in these words: "Resolved, (1) That the Secretary of State be and he is hereby authorized and required to issue to Ailsey Medlin, for the services of her father, Benjamin Schoolfield, in the continental line of the State in the War of the Revolution, or her heirs or assignee, a grant or grants for a quantity of land, not exceeding 640 acres, to be located in one body, or in quarter-sections of not less than 160 acres, on any of the lands of this State now subject to entry by law; said grant or grants to be issued on the application of the said Ailsey Medlin, her heirs or assignee, as she or they may prefer, in one or four grants. (2) That the said warrant or warrants shall or may be laid so as to include any lands now belonging to the State for which the (314) State is not bound for title: Provided, that this act does not extend to any of the swamp lands of this State." On 25 September, 1849, a grant for the premises was issued to the lessor of the plaintiff, wherein is recited the above resolution in favor of Ailsey Medlin, and *Page 215 
that Stanmire is her assignee, and the land is described as lying in the Cherokee Country, by metes and bounds set forth in the patent and in the plat annexed thereto, and the quantity stated to be 640 acres.
The defendants admitted themselves to be in possession of 400 acres, part of the land granted to the lessor of the plaintiff, and they claimed title thereto as follows: It is tract No. 71, in District 6 of the Cherokee lands, surveyed for the State for sale on 29 May, 1837, and was purchased from the commissioners, Samuel F. Patterson and Charles L. Hinton, at the sales of the Cherokee lands on 2 November, 1838, at the price of $8,000, by the defendant John A. Powell, who then paid $1,000 of the purchase money and gave his bond for the residue, according to the statute. He took from the commissioners a certificate of his purchase, endorsed on the survey, describing the land, and in 1841 he paid into the treasury the sum of $400, in part of his bond. Immediately on his purchase he entered into possession of the land, and he and the other defendants under him have been in possession of that parish ever since, claiming it under the purchase. By consent, a verdict was taken for the plaintiff, subject to the opinion of the court on the foregoing facts. Afterwards his Honor, being of opinion with the defendants, set the verdict aside, and, according to the agreement, gave judgment of nonsuit, but allowed the plaintiff an appeal.